IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| KENNEDY AUTO PARTS CORP. D/B/A EMPORIUM POWER MOTOR<br><br>    Plaintiff<br>                    v.<br><br>FLORIDA ASSOCIATION OF TRUCKERS, INC., ANGEL BAEZ-CAMACHO, NANCY CAMACHO, STR MOTORSPORTS. INC., BRUCE RAMSEY AND JANE DOE<br><br>    Defendants | **Civil No. 06-1811 (SEC)** |

**OPINION AND ORDER**

On August 21, 2008, Kennedy Auto Parts ("KAP") filed the above captioned complaint against Florida Association of Truckers ("FAT")[1], Angel Báez-Camacho ("Báez"), and Nancy Camacho[2] ("Camacho") (collectively "Defendants"),[3] STR Motorsports, Inc. ("STR"), Bruce Ramsey ("Ramsey") and Jane Doe, claiming breach of contract, intentional interference with a contractual relationship and collection of monies. Docket # 1. Summons were issued and served upon defendants. See Dockets ## 2 & 27. On May 16, 2008, FAT, and Báez filed a Motion to Dismiss for Want of Personal Jurisdiction Pursuant to FED. R. CIV. P. 12(b)(2), alleging that this Court lacked jurisdiction over the present case. Docket # 35. In the interim, pursuant to a confidential settlement agreement, the claims against Ramsey and STR were dismissed. Docket # 81.

On January 11, 2008, KAP requested that default be entered against (Docket # 57).

---

[1] Báez is the President of FAT.

[2] All notifications sent by the Clerk of the Court to Camacho, Báez's wife, have been returned as undeliverable. However, she is still a defendant in the present case.

[3] Initially, Defendants were represented by counsel. However, as of the date of this order, they appear before this Court *pro se*.

However, at that time, their request was denied since Defendants duly opposed KAP's requests, and they had also filed a motion to dismiss (Docket # 35). On February 22, 2008, this Court issued a Case Management Order, setting the deadlines that would govern the proceedings of the case. Docket # 66.

On May 12, 2008, KAP once again requested that default be entered against Defendants, alleging that they were delaying "all pretrial proceedings including the initial disclosure stage and the discussion and drafting of the Joint Case Management Memorandum." Docket # 76. On June 17, 2008, KAP filed a third motion requesting entry of default against Defendants. Docket # 85. Both motions were denied. Dockets ## 77 & 94. Thereafter, this Court denied Defendants' motion to dismiss. Docket # 93.

On November 10, 2008, this Court issued an Order re-setting the case's deadlines, and considering KAP's averments as to Defendants' alleged refusal to participate in the proceedings of the case, warning the parties that failure to comply with its orders would entail sanctions. Docket # 94. On November 21, 2008, Báez[4] filed a motion requesting that the present case be stayed, alleging that he was in the process of filing for bankruptcy in Florida. Docket # 96. However, this Court denied his request, noting that although Báez argues that he retained counsel to file a Chapter 7 petition, he had not filed for bankruptcy, and as such, an automatic stay of the pending proceedings was unwarranted. Docket # 98. Shortly thereafter, Báez filed his answer to the complaint. Docket # 100.

On December 24, 2008, this Court issued an order due to the parties' failure to comply with the Case Management Order's deadlines, specifically, that they did not file the Joint Case Management Memorandum, and the Rule 26 Meeting Report by the due date. Docket # 102. On January 9, 2009, KAP filed another motion requesting that default be entered against Báez, and informing this Court that Báez refused to participate in the proceedings,

---

[4] Báez filed numerous motions on his own behalf. However, insofar as he is the President and sole owner of FAT, and was married to Camacho at the date of the filing of the instant complaint, this Court considers that all filings made by Báez are made of behalf of FAT and Camacho as well.

impeding KAP from complying with this Court's Case Management Order's deadlines. Docket # 104. On January 14, 2009, this Court denied KAP's request for entry of judgment, but, in light of Báez's blatant disregard for this Court's orders, ordered him to comply with the deadlines set forth in the Case Management Order, or face the imposition of sanctions. Thereafter, the parties filed separate Case Management Memorandums which were duly stricken from the record, and re-filed jointly on February 13, 2009. Dockets ## 108-111. The parties also jointly filed the Rule 26 Meeting Report. Docket # 112. On April 22, 2009, this Court issued another order due to the parties' failure to file their Joint Proposed Pretrial Order by the due date. Docket # 113. Shortly thereafter, KAP filed a motion submitting its Proposed Pretrial Order, and stating once again that Báez refused to participate in the proceedings of the instant case because he was allegedly filing for bankruptcy. Docket # 114.

After reviewing the record, this Court concluded that Defendants intentionally delayed the proceedings of this case by refusing to cooperate with KAP, and also failed to comply with this Court's orders. Considering that the present suit was filed on August, 2006, that Defendants had been granted numerous extensions to comply with this Court's orders, and repeatedly warned that failure to comply with the same would entail sanctions, default was entered against Defendants. Dockets ## 115-116.

A Default Hearing was held on September 25, 2009. See Docket # 121. During said hearing, KAP presented Jorge Hernandez Miller, KAP's President, testimony, as well as documentary evidence.

Upon reviewing the facts of the complaint, which are deemed as true in light of the default entered against Defendants, and after hearing the evidence brought forth by Plaintiff in support of its damages claims, this Court makes the following findings of fact and law.

**Findings of Fact**

KAP is the owner of a scooter distribution dealer located at Kennedy Avenue, in San Juan. On February 2005, KAP and Báez were introduced by a mutual acquaintance, and

4

began negotiations for the purchase of motor scooters to be sold in Puerto Rico. Báez portrayed to KAP, and its legal representatives, that he was duly authorized to grant KAP exclusive distribution in Puerto Rico of all Cobra Power Sports, Taiwan Golden Bee, KYMCO and CPI motor scooter models. As a result, KAP requested that Báez act as its representative in negotiating a distribution agreement with STR. In order to provide him with an incentive, and a compensation for his services, KAP agreed to pay Báez a $100 commission for each unit acquired from STR during the first five years of said agreement. KAP also placed an initial purchase order for STR's products, and initially deposited $336,000 in FAT's account. Therafter, KAP made additional transfers to FAT's account.

On May 3, 2005, Báez, acting on his own behalf, and as an official agent for FAT, entered into an Exclusive Distribution Agreement with KAP, granting the latter exclusivity in the distribution of Cobra Power Sports, Taiwan Golden Bee, KYMCO and CPI motor scooter models in Puerto Rico.[5] As part of the agreement, "all buyers who are interested in the Puerto Rico market will be referred to the exclusive distributor in Puerto Rico, Kennedy Auto Parts Corp." Docket # 92-52. Moreover, FAT could not "establish commercial ties with any other company." Id. In compliance with the above mentioned contract, KAP began an aggressive advertising campaign for the sale of said products in Puerto Rico. As part of the same, in the summer of 2005, KAP participated in the Puerto Rico Bike Show at the Hiram Bithorn Stadium in San Juan. KAP also issued checks payable to Báez in his personal capacity which amounted to $521,806.80 for the purchase of motorcycles and scooters. See Docket # 44, Exh. 5. However, KAP did not receive all the products it paid for, specifically, two scooters were missing from the first shipment received. Moreover, KAP first learned that other dealers were selling said products in Puerto Rico.

---

[5] On June 10, 2005, a Commercial Agency Agreement was sent by fax to Báez. Per said agreement, FAT, represented by Báez, appointed KAP as the sole and exclusive commercial agent and distributor of scooters and all terrain vehicles under the trade name of CPI-USA in Puerto Rico, as well as in other countries listed within the contract. Also, the agreement was subject to the laws of the Commonwealth of Puerto Rico. See Docket # 1, Exh. 2. However, said document is not signed by Báez.

**Civil No. 06-1811(SEC)**                                                                                                       5

According to KAP, Báez repeatedly stated that he had exclusive rights to distribute KYMCO products in Puerto Rico, as evidenced by a letter sent on August 31, 2005 by Darren M. Soto, Báez's Counsel. See Docket # 44, Exh. 4. Per said representations, KAP started negotiations for a distribution agreement with STR, through which all dealers in Puerto Rico would acquire STR/KYMCO products from KAP. See Docket # 1, Exh. 3. However, before the proposed agreement was signed by the parties, Báez's Counsel informed KAP about certain modifications to the initial proposed agreement through which Báez as well as STR allegedly conditioned the granting of the exclusive distribution of KYMCO products in Puerto Rico. The modifications included KAP's agreement to pay Báez a $100 commission per unit for every sale consummated pursuant to the proposed agreement. See Docket # 44, Exh. 4. In order to ensure their exclusive right to distribute the products in Puerto Rico, KAP accepted and signed the modified agreement. Nevertheless, when KAP contacted Ramsey, STR's President, Ramsey informed KAP that he had never authorized the modifications made by Báez. Ramsey also informed KAP that he would not accept a third party in the distribution contract, especially when Báez lacked the authority to grant a distribution agreement. See Docket # 1, 39-40. Ramsey acknowledged that KAP had paid, through Báez, more than $400,000 in advance for KYMCO products, in addition to all expenses incurred in the publicity for said products.

On August 19, 2005, a third party, International Trading Partners (hereinafter ITP) filed an amended complaint against FAT, among others, in the U.S. District Court for the District of Puerto Rico alleging a violation of the Puerto Rico Distribution Law, P.R. Law 75 of June 24, 1964, P.R. Laws Ann. Tit. 10 §§ 278 et seq. (hereinafter Law 75), whereupon they were granted injunctive relief against all vendors and distributors in Puerto Rico, including KAP.[6] As a result of the foregoing, KAP's sales and relationship with other

---

[6] According to ITP, "Cobra and Mr. Báez Camacho used FAT to circumvent the protections afforded to ITP locally by Law No. 75. They did this by Cobra selling TGB's to FAT in Florida, who in turn sold the scooters in Puerto Rico. This scheme started as early as January 2005." See Docket # 44, Exh. 7.

**Civil No. 06-1811(SEC)**                                                                                                  6

distributors and vendors was adversely affected. Also, some vendors and distributors were served with subpoenas.

Subsequently, KAP also became aware of Báez's dealings with La Perla Auto Sales to sell DIAMO scooters in Puerto Rico. In fact, La Perla Auto Sales filed a complaint against FAT and Báez, among others, in the District Court of Fort Bend County, in Texas, for breach of contract, negligent misrepresentation and tortious interference with contract, among other allegations. See Docket # 44, Exh. 7.[7] Furthermore, KAP learned that there was an authorized distributor of CPI products in Puerto Rico, which impeded KAP from selling the products in this jurisdiction. Thus KAP has suffered great economic losses as a result of its business dealings with Báez.

## Conclusions of Law

By virtue of the default entered against Defendants, this Court deems the afore-mentioned facts to be true. After reviewing the filings, the evidence in the record, and testimony provided during the default hearing, this Court finds that KAP is entitled to relief for Báez's breach of contract, and for his misrepresentations and tortious interference with the negotiations between KAP and STR, under the Puerto Rico Civil Code Article 1802, P.R. Laws Ann. tit. 31, § 5141.

*Breach of Contract*

When jurisdiction is based on diversity of citizenship, federal courts must apply state substantive law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 92 (1938); Morel v. Damler Chrysler AG, 557 F. Supp. 2d 240 (D.P.R. 2008). Since the present case arises under diversity jurisdiction, Puerto Rico substantive law, and applicable case law, applies. The

---

[7] In said complaint, La Perla alleged that in February 2006, La Perla's President, Osvaldo Maldonado, met Báez at a tradeshow in Indiana. La Perla claims that Báez represented himself as President of FAT and an authorized distributor for DIAMO scooters in Puerto Rico. See Docket 44, Exh. 7. La Perla averred that due to Báez's false representations, promises, pretenses and negligent representations, it suffered economic losses. See Docket # 44, Exh. 7.

**Civil No. 06-1811(SEC)**                                                                                                      7

Puerto Rico Supreme Court has held than "w]hen the breach of a contractual obligation causes harm to any of the contracting parties, an action for damages for breach of contract lies." Soc. de Gananciales v. Velez & Asoc., 145 P.R. Dec. 508 (1998). The Puerto Rico Civil Code distinguishes between damage resulting from breach of contract under Article 1054, and damage resulting from breach of obligations and duties imposed by nature and by law that are necessary for social coexistence under Article 1802. Id.: See P.R. Laws Ann. tit. 31, §§ 3018 and 5141; Ramos Lozada v. Orientalist Rattan Furniture Inc., 130 P.R. Dec. 712 (1992). Actions *ex contractu* are based on the breach of a duty that arises from an express or implied contract, and seek fulfillment of promises agreed to by the contracting parties. Id. (citations omitted). If the damage arises exclusively as a result of a breach of contract, the *ex contractu* damage action would be the only available remedy.

In order for a breach of contract claims to succeed, "there must have been a meeting of minds that gave rise to an obligation, situation, or state of law resulting from an agreement, and that created certain expectations on the basis of which the parties acted. Ordinarily, each party trusts that the other party will comply with what has been freely agreed upon, in keeping with the binding nature of contracts and with good faith. A voluntary act or omission that results in the breach of a previously constituted obligation gives rise to an action for contractual damages." Velez & Asoc., 145 P.R. Dec. 508.  The affected party's entitlement to "[i]ndemnity for losses and damages includes not only the amount of the loss which may have been suffered, but also that of the profit which the creditor may have failed to realize..." Article 1059, P.R. Laws Ann. tit. 31, §§ 3023.

Upon reviewing the Exclusivity Agreement (Docket # 92-2) signed by KAP and Báez, as President of FAT, this Court finds that FAT and Báez failed to comply with the terms of said agreement. Therein, FAT agreed to refer to KAP all interested buyers in Puerto Rico, and denoted KAP as the exclusive distributor of Cobra Power Sports, TGB, Taiwan Golden Bee, Kymco, and CPI products.  Among his obligations, FAT would not establish

**Civil No. 06-1811(SEC)**                                                                                                           8

commercial ties with any other local company. Also, FAT would provide advertising merchandise to KAP. In compliance with the agreement, KAP aggressively promoted the brand, and sale of the products. As shown by KAP during the default hearing, they invested $87,000 in advertising the products, including participation in a bike show held at the Hiram Bithorn stadium, demo motorcycles, and magazine and newspaper ads, among other expenses. See Docket 122, Exhibits ## 3A, 3B, 3C, 3D, 3E, 3F, 3G, 3H, 3I, 3J, 3K, 3L, 3M, 3N, 3O. During said hearing, KAP also showed that they placed a purchase order, and transferred, or paid *via* check, to FAT/Báez the following amounts: $164,520, $361,710, $226,788, $148,665, $16, 800, and $148,665. See Docket # 122, Exhibits ## 2A, 2C, 2D, 2E, 2G, 2H. Notwithstanding, FAT failed to transfer said amounts in full to STR. Moreover, KAP did not receive all of the purchased items, and Báez did not return $150,000 paid for merchandise that was never delivered to KAP.

Moreover, KAP learned that despite the alleged exclusivity agreement signed with Báez, Báez negotiated with La Perla Auto Sales to sell DIAMO scooters in Puerto Rico, that STR never granted Báez authorization to grant exclusive distribution rights for the sale of Kymco products in Puerto Rico, and that there was an authorized distributor of CPI products in Puerto Rico, which impeded KAP from selling the products in this jurisdiction. In fact, ITP filed suit against FAT and Báez in this district, alleging a violation of Law 75, and seeking injective relief against all vendors and distributors in Puerto Rico, including KAP.

As a result of the foregoing, this Court finds that Báez and FAT breached the terms of their contract with KAP.

*Article 1802*

Article 1802 states that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." In order to prevail in a claim under Article 1802, the plaintiff must show "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of

**Civil No. 06-1811(SEC)**                                                                                            9

damage, and (4) a causal connection between the damage and the tortious conduct." Albertorio-Santiago v. Reliable Fin. Servs., 612 F. Supp. 2d 159, 168-69 (2009). "Under Puerto Rico law, a legal duty arises in one of three ways: (1) by a statute, regulation, ordinance, bylaw, or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation." Id. at 169.

Plaintiff alleges that it suffered damages as a result of Báez's interference with STR and KAP's contractual relationship. However, this Court notes that STR and KAP never formally signed an agreement, since STR refused to enter into a contractual relationship with KAP. Considering that a claim for tortious interference with a contractual relationship requires that a third party interfere with a *bona fide* contract, said doctrine is not applicable to the case at bar. See Gen. Office Prods. v. A.M. Capen's Sons, 115 P.R. Dec. 553 (1984). As a result, KAP's claims on this front are limited to tortious liability under Article 1802.

The Puerto Rico Supreme Court has recognized the imposition of precontractual liability when a party interrupts negotiations without cause, finding that it constitutes a breach of the good faith that permeates our legal system. See Tommy Muñiz v. Comite Organizador, 113 P.R. Dec. 517 (1982). The Court therein noted that in analyzing the "wide spectrum of grounds upon which precontractual liability may rest requires that this problem be analyzed bearing in mind what legal concept--fault, dolus, fraud, good faith, abuse of law, or other general principle of law--is the most adequate to serve as legal ground on which to solve the case." Albeit this case deals with Báez's interference with STR and KAP's negotiations, which ultimately led to STR's refusal to enter into an agreement with KAP, considering the wide spectrum of tortious conduct covered by Article 1802, this Court finds that Báez breached the duty of good faith during his negotiations with KAT, and as a result of his bad faith, FAT has suffered damages.

Specifically, pursuant to the testimony of Jorge Luis Hernández Miller, KAP's

**Civil No. 06-1811(SEC)** 10

President, they placed an order with STR for approximately 40 containers, each transporting an estimated 60 motorcycles, to be sold by KAP's dealers. The sale of said merchandise would amount to profits in excess of the $950,000, since KAP would earn around $600 per motorcycle sold. However, due to the falling out with STR after Báez's misrepresentations, and tortious conduct, KAP did not receive said shipments, which resulted in a considerable loss of profit. Thus KAP has shown a loss of profit in excess of $950,000, as a result of Báez's actions. According to Hernandez Miller, KAP does not currently sell any brand of motorcycles or scooters.

Based on said facts, and the evidence provided at the default hearing, this Court finds that Plaintiff is entitled to damages as follows:

### Damages

a. $150,000 as compensation for the monies retained by FAT without justification or KAP's authorization, as partial payment of a purchase order that was not fully delivered to KAP (KAP paid Báaz/FAT $521,806.80, to be paid to STR but Báez failed to transfer the full amount; STR/Ramsey acknowledged they received more than $400,000).

b. $87,000 as compensation for the costs incurred by KAP in promoting the products in Puerto Rico, pursuant to the KAP/FAt agreement;

c. $950,000, per the allegations in the complaint, under Article 1802 for interfering with the negotiations between KAP and STR, and misrepresenting himself as authorized to grant KAP exclusive distribution of Cobra Power Sports, Taiwan Gold Bee, KYMCO and CPI motor scooters, adversely affecting the relationship between STR and KAP, KAP's credibility, and business in Puerto Rico.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2009.

**Criminal No. 06-1811 SEC)**                                           11
_____

                                          *S/Salvador E. Casellas*
                                          SALVADOR E. CASELLAS
                                          U.S. Senior District Judge